VALKYRIE LAW GROUP, P.C.
HEATHER L. BLAISE, ESQ. (SBN 261619)
1 N. State Street, Suite 1500
Chicago, IL 60602
Telephone: 312-448-6602
Email: hblaise@valklaw.com

Attorneys for Plaintiff,
COLETTE MILLER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLETTE MILLER, an individual, | CASE NO: _____ |
| Plaintiff, | **COMPLAINT FOR COPYRIGHT INFRINGEMENT AND TRADE DRESS INFRINGEMENT UNDER THE LANHAM ACT** |
| v. | |
| UCB, S.A., a Belgian corporation, UCB, INC., a Delaware corporation, HAVAS HEALTH, INC., a New York corporation, GARTNER, INC., a Delaware corporation, and DOES 1-10, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff COLETTE MILLER ("Plaintiff," "Miller"), an individual, by and through her attorneys, Valkyrie Law Group, P.C., as and for her Complaint for Copyright Infringement and Trade Dress Infringement under the Lanham Act ("Complaint") against Defendants UCB, S.A., a Belgian corporation, UCB, INC., a Delaware corporation, HAVAS HEALTH, INC., a New York corporation, GARTNER, INC., a Delaware corporation, and DOES 1-10 (collectively "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.   This lawsuit concerns Defendants' willful, brazen, and extensive unlawful

infringement of Plaintiff's exclusive copyright in works of fine art entitled Liberty Wings (the "Original Work"), which was created by the Plaintiff, Colette Miller, in relation to her trademarked *Global Angel Wings Project*. That Miller's beautiful and highly distinctive artwork is being used by Defendants to promote the pharmaceutical product to treat psoriasis, Bimzelx (the "Product"), is both an egregious violation of federal law and an affront to Miller, her livelihood, her legacy, and to artists everywhere.

2. Miller is the owner of the United States Trademark for Global Angel Wings Project under Serial Number 87168985 (the "Mark"), which was registered on November 28, 2017 under International Classification 16 for Murals.

3. In connection with Plaintiff's commercial exploitation of the Mark, Colette Miller has painted her wings in North America, US, Canada, Mexico, Kenya, China, Japan, Taiwan, Malaysia, England, France, Spain, Italy, Germany, Ukraine, Moscow, Turkey, Dubai, Australia, Cuba, Brazil, etc. She has also licensed her wings for apparel, fabrics, prints, pool floaties, nail polish, pet collars, scarves, pillows, bags, pins, jewelry, video games, assorted gift merchandise at the Burj Kalifa and stained glass, etc. She has worked with entities such as UNICEF, LA Tourism (in China and Australia), American Airlines, Pancreatic Cancer Society, Kimpton Hotels, The Grammy Museum, Ritz Carlton, Shanghai Arshang Museum, LA Dodgers, Lyft, SOMarts Cultural Center, General Motors, Viceroy Hotels, TEDx, Four Seasons, Harmony for Hope, Barilla, Project Angel Food, Hotel Indigo, Yale University, Hotel Amara Istanbul and numerous real estate developers.

4. As a result of her *Global Angel Wings Project*, feathered angel wings painted as a mural in human proportion on public spaces has become Plaintiff's calling card and her trade dress. In fact, members of the consuming public routinely call the distinctive murals, Plaintiff's "Wings."

5. Without the consent of Plaintiff, and without her knowledge, Defendants infringed upon her rights by creating an entire scene featuring an unauthorized copy of

1. the Original Work in its commercials for the Product (the "Infringing Commercials") and used the phrase "I was born with *wings*," as the opening sentence of the Infringing Commercials while the actor poses with the life-size wings in a mural form for which Plaintiff and her *Global Angel Wings Project* has become synonymous.

6. Below, left, is the Original Work, Liberty Wings. Below, right, is a still image from the Infringing Commercials. As set forth more fully below, the scene from the Infringing Commercials (the "Infringing Work") intentionally copies the Original Work and Plaintiff's trade dress and is a blatant attempt to appropriate not only the immediately-identifiable and unique look and feel of the Original Work, but also many of the specific copyrightable elements in the Original Work, including stylized motifs of life-sized feathered angel wings on an exterior building, from a straight on perspective to encourage humans to be photographed with arms outspread to mimic an angel spreading its wings, with a white highlight, along with featuring nearly the same exact shades of teal green and yellow. The height, scale, colors, shape, texture, and overall impression of the Infringing Work is substantially similar to the Original Work.

 

7. Defendants' exploitation of Plaintiff's Original Work is particularly troubling for several reasons.

8. The entire theme of the of the Infringing Commercials is premised on Plaintiff's Global Angel Wings Project in that the actor in the opening scene dramatically poses in front of a wall mural substantially similar to the Original Work and evoking Plaintiff's trade dress embodied in wall mural angel wings and states: "I

was born with *wings* but psoriasis swooped in to clip them."

9. The artwork in the scene in the Infringing Commercials is so clearly a copy of Plaintiff's work that even before the infringement became known, friends of Plaintiff were expressing their surprise at her "participation" in the Infringing Commercials.

10. Plaintiff is a serious professional whose work hangs in private collections, galleries, public spaces and museums and her career depends upon the respect and admiration of consumers of art, dealers, collectors and critics of contemporary art. By the forced and unauthorized association of her work with the Infringing Commercials and the Product, the integrity of her work and her reputation as an artist has been damaged.

11. Accordingly, as set forth more fully below, the Plaintiff seeks damages and equitable relief for direct, contributory and vicarious copyright infringement, arising from the creation and unlawful use of a substantially similar copy of her Original Work in violation of the United States Copyright Act, 17 U.S.C. § 101 et seq. (the "Copyright Act").

12. Additionally, as set forth more fully below, Plaintiff seeks, a permanent injunction pursuant to 15 USCS § 1116, enjoining and restraining defendant and its officers, directors, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from using Plaintiff's trade dress or any trade dress that is confusingly similar to plaintiff's trade dress; for an order directing Defendant(s) to recall all products, packaging, and promotional materials bearing the infringing trade dress; an award of Defendants' profits derived from its infringing activities pursuant to 15 USCS § 1117; an award of all damages sustained by Plaintiff as a result of Defendants' infringing activities pursuant to 15 USCS § 1117; an enhancement of the award of profits and/or damages pursuant to 15 USCS § 1117, as the Court finds appropriate due to the willful nature of Defendants' infringement; and an award of Plaintiff's reasonable attorneys' fees and costs pursuant to 15 USCS § 1117 under the

Lanham Act. 15 U.S.C. § 1051 et seq.

## PARTIES, JURISDICTION, AND VENUE

13. Plaintiff COLETTE MILLER is a United States citizen with a residence, art studio and private exhibition space in Los Angeles, California and Richmond Virginia. Her work has been exhibited in California and internationally in commercial galleries and non-profit institutions.

14. Defendant UCB, S.A. is a foreign corporation organized and existing under the laws of Belgium, with its headquarters located at Allée de la Recherche, 60 B - 1070 Brussels, Belgium.

15. Defendant UCB, S.A. is a global biopharmaceutical company engaged in the research, development, manufacturing, and commercialization of pharmaceutical products, including in the United States.

16. At all relevant times, Defendant UCB, S.A. has conducted substantial business in the United States, including but not limited to the distribution, marketing, and sale of pharmaceutical products, and maintains affiliates or subsidiaries within this Judicial District.

17. Upon information and belief, Defendant UCB, INC. is a Delaware corporation with its principal office located at 1950 Lake Park Drive, Smyrna, Georgia 30080, and the United States subsidiary of Defendant UCB, S.A.

18. Upon information and belief, UCB, Inc. is engaged in the research, development, manufacture, marketing, and distribution of pharmaceutical products throughout the United States, including within this Judicial District. Defendants UCB, S.A. and UCB, Inc. hereinafter shall collectively be referred to as "UCB."

19. Upon information and belief, Defendant HAVAS HEALTH, INC. ("Havas") is a New York corporation, with its principal executive office located at 200 Hudson Street, New York, NY 10013. Havas Health, Inc. is a subsidiary of the Havas Group, a global communications and marketing organization headquartered in France.

20. Upon information and belief, Havas provides marketing, branding,

advertising, and strategic communications services to clients in the pharmaceutical, healthcare, and life sciences industries throughout the United States, including within this Judicial District.

21. Upon information and belief, Havas is the parent company of JACQUES formerly known as "Havas Tonic," which, upon information and belief, was the agency involved in the Infringing Commercials, as further discussed below.

22. Upon information and belief, Defendant GARTNER, INC. ("Gartner") is a Delaware corporation with its principal place of business located at 56 Top Gallant Road, Stamford, CT, 06902, and is a global research and advisory firm that produces market analysis, strategic insights, and commercial media content for business clients.

23. Upon information and belief, Gartner, directly or through its agents, produced and publicly disseminated the Infringing Commercials.

24. Upon information and belief, Doe Defendants are one or more individuals or entities who participated in, facilitated, encouraged, and/or had supervisory authority over, the infringement set forth herein and are therefore wholly or partially liable therefor.

25. This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. § 501 (copyright infringement), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1338(a) (acts of Congress relating to copyrights), and 15 USCS § 1121, as this is a civil action arising under the Lanham Act, a federal trademark statute.

26. This Court has personal jurisdiction over the Defendants because each Defendant regularly transacts or solicits business in California, has committed a tortious act in California, or has committed a tortious act that has caused damage to the Plaintiff in this state.

27. Venue is appropriate in this district pursuant to 28 U.S.C. §§ 1391(a)-(b) and 28 U.S.C. § 1400(a).

28. This Court has personal jurisdiction over each Defendant in that, among

other things, each Defendant does business in this Judicial District, and Plaintiff does business and is suffering harm in this Judicial District.

## FACTS RELEVANT TO ALL COUNTS

**A. Plaintiff and the Original Work**

29. Plaintiff is a United States citizen and lives and works in Los Angeles.

30. Plaintiff's work consists of paintings, works on paper, sculpture, photography, performance art, and installations. Her work is critically acclaimed and resides in a number of high-profile collections and galleries. She has also licensed her wings to dozens of films, television shows and media outlets including Hollywood Teen medium, Growing Up Top Model, Cobra Kai, I Want My Phone Back, BUZZFEED, Refinery 29, Orion Beer commercial (Japan), Invisalign M2M Wildness, Hop Skip Jump, GHOSTING, AHA Film and Committee for a Better LA, We are the Los Angeles Busy Tonight Show – Turbo Productions, Artist Spotlight LA BB&T (Saville Productions), IF ONLY, New Wave Entertainment–ZOO, Angels Friends photography license, Hangzou China, EYLA interior work space LA, LAMF "Summertime," Venus as a Boy, Full Bloom, Blue Orbit, To Tell The Truth, Random ACT of Magic, Street Art Stories, As the Cookie Crumbles, Sela Films The Program (untitled project, Wings on Macys DTLA), A&E Network Angel tv series, The Rookie (Arts District "Coop Wings", Ford Auto commercial, American Songs – Prospect Productions, EFT Media Evolution, Media Housewives, Abby List film – Hermosa Beach, Mullen Lowe Media Hub – El Segundo, NETFLIX Happy Place, Ndeska X Brent Faiyez interview, Light Switch – film HARD SUMMER, International Love tv show, Delerium TV, Dress My Tour tv – Bright Roads Productions, New Remote Productions/Viacom CBS, Killer Queen Wine Bar wings mural – SCRIPPS Network LLC, Pie Town TV, Ohio Singles Project/Paramount/Delerium TV, Dena Strong, Alta Dena, Black Eyed Peas Video (Alta Dena Fire Relief), Airports: Heathrow London, LAX, O'Hare Chicago and Liberty Newark.

31. The Original Work was part of the *Global Angel Wings Project* (the

"Project"), created by Plaintiff in 2012, in the streets of Los Angeles, the City of Angels, and from part of an ongoing series of related artwork. The Project's mission statement states the wings "were painted to remind humanity that We are the Angels of this Earth. They are human sized interactive public art, wings that people take photos with and thus become part of the artwork." *Mission Statement*, THE ORIGINAL GLOBAL ANGEL WINGS PROJECT CREATED 2012 (Dec. 23, 2023) https://globalangelwingsproject.com/home/f/mission-statement (last visited Dec. 17, 2025); *see also* **Exhibit A**, Plaintiff's Instagram Posts, attached hereto.

32. The *Global Angel Wings Project* is also a registered trademark owned by Plaintiff.

33. Plaintiff's Project contain a unique combination of expressive features, including: vibrant, layered brushstrokes producing a textured, feathered effect; symmetrical but intentionally imperfect wing shapes that emphasize organic authenticity; a distinctive color palette typically incorporating vivid blues, reds, purples, greens, yellows, and iridescent highlights; human-scale placement that aligns the wings precisely with the average viewer's height; a format designed for active viewer participation intended for individuals to stand before the wings, visually "completing" the artwork.

34. Each set of angel wings is a mural executed by applying acrylic paint or acrylic-painted paper to the wall before adding additional details.

35. The Plaintiff has been engaged to paint her "Wings" as part of the Project all over the world, in countries such as Kenya, Australia, England, Japan, France, Cuba, Mexico, Dubai, Taiwan, as well as multiple locations within the United States.

36. Plaintiff's Original Work and the Project have been continuously featured and illustrated on the Plaintiff's webpages at https://colettemiller.com/ and https://colettemiller.com/global-angel-wings-project since at least September 2016, and via Plaintiff's Instagram account, @colettemillerwings, with posts of works of the Project painted around the world since December 2013.

37. During and as a result of the above-referenced exhibitions, the Original Work and the Project were widely covered and praised in the U.S. and foreign press.

38. On November 27, 2019, the U.S. Copyright Office issued a copyright registration for the Original Work, Liberty Wings, as Registration No. VA 2-179-928. *See* **Exhibit B**, Copyright Registration, attached hereto.

39. The Original Work is an original work of authorship, fixed in a tangible medium of expression, containing substantial amounts of Plaintiff's original creativity, and are therefore copyrightable works under the Copyright Act.

**B. The Infringing Commercials**

40. On March 10, 2024 the First Infringing Commercial was released by Defendants.

41. The First Infringing Commercial entitled "Born with Wings" features three (3) actors portraying characters describing their challenging experiences with psoriasis, and their supposed improvement after using the advertised Product. The First Infringing Commercial is 1 minute long, and consists of a number of distinct scenes featuring different settings of the actors. The First Infringing Commercial is available at https://www.youtube.com/watch?v=NEqGB-yCewc.

42. The First Infringing Commercial opens with a woman standing in front of a copy of Plaintiff's Original Work, stating "I was born with *wings* but psoriasis swooped in to clip them[,]" and the wings are visible in the first 6 seconds of the First Infringing Commercial.

43. The First Infringing Commercial was part of the Defendant UCB's direct-to-consumer advertisement campaign for the Product that launched during the 96th Academy Awards, and UCB was "running the campaign across TV, online video, digital, social media and the point of care and [added] channels over time, with TikTok on the roadmap." Nick Paul Taylor, *UCB bursts back into DTC ads, using Oscars to launch Bimzelx campaign*, Fierce Pharma (Mar. 10, 2024) https://www.fiercepharma.com/marketing/ucb-bursts-back-dtc-ads-using-oscars-launch-bimzelx-campaign#:~:

Complaint for Copyright Infringement and Trade Dress Infringement under the Lanham Act

text=UCB%20bursts%20back%20into%20DTC,broadcast%20spot%20throughout%20March%20Madness (last visited Dec. 17, 2025).

44. Plaintiff was alerted to the misuse of the Original Work in the First Infringing Commercial by acquaintances and members of the consuming public who were surprised to see what they assumed to be her willing participation.

45. Plaintiff, through her counsel, promptly contacted Defendant UCB, Inc. to object strongly to the unauthorized copying and display of her Original Work.

46. To date, the First Infringing Commercial continues to air.

47. On or about November 9, 2025, Defendants released the Second Infringing Commercial.

48. The Second Infringing Commercial opens with the same scene as the First Infringing Commercial.  The Second Infringing Commercial is 45 seconds long, and features the same actress portraying a character describing her challenging experiences with psoriasis, and her supposed improvement after using the advertised Product.  The Second Infringing Commercial is available at https://www.youtube.com/watch?v=XgjM7c6aBtQ.

49. Plaintiff was alerted to the misuse of the Original Work in the Second Infringing Commercial by acquaintances and members of the consuming public who were surprised to see what they assumed to be her willing participation.

50. To date, the Second Infringing Commercial continues to air.

51. Plaintiff has suffered, and continues to suffer, from the infringing activities of the Defendants, including without limitation from Defendants' usurping of Plaintiff's right to control the publication and commercial use of the Original Work, Defendants' failure to pay any license fees commensurate with the value of their commercials and promotional use of the Original Work and/or its unauthorized copies, Defendants' failure to account for or disgorge the profits directly and indirectly attributable to their misconduct, and Defendants' failure to mitigate damages by withdrawing the First Infringing Commercial from public view, and releasing the

Second Infringing Commercial to the public.

52. In addition, Defendants' actions have caused significant harm to Plaintiff and the Original Work, thereby significantly damaging the value of the Original Work, all of the Plaintiff's other works, and the value of any licenses for her artworks in the relevant markets.

## COUNT I

## DIRECT COPYRIGHT INFRINGEMENT

### The First Infringing Commercial

*Against All Defendants*

53. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54. The acts of the Defendants constitute infringement of Plaintiff's copyright and exclusive rights under copyright in the Original Work in violation of the Copyright Act, 17 U.S.C. § 106.

55. Upon information and belief, the foregoing acts of infringement by Defendants have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiff's rights.

56. The infringement of Plaintiff's rights in the Original Work constitutes a separate and distinct act of infringement.

57. As a direct and proximate result of Defendants' foregoing acts, the Plaintiff is entitled to actual damages and disgorgement of the Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504.

58. Unless and until the Defendants' ongoing conduct with respect to the First Infringing Commercial is enjoined by this Court, such conduct will continue to cause irreparable injury to Plaintiff's legacy and the integrity of the Original Work that cannot fully be compensated for or measured in money, and Plaintiff is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502, prohibiting further infringement of her exclusive rights under copyright.

# COUNT II

## DIRECT COPYRIGHT INFRINGEMENT

### The Second Infringing Commercial

*Against All Defendants*

59. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 52 of this Complaint as if fully set forth herein.

60. The acts of the Defendants constitute infringement of Plaintiff's copyright and exclusive rights under copyright in the Original Work in violation of the Copyright Act, 17 U.S.C. § 106.

61. Upon information and belief, the foregoing acts of infringement by Defendants have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiff's rights.

62. The infringement of Plaintiff's rights in the Original Work constitutes a separate and distinct act of infringement.

63. As a direct and proximate result of Defendants' foregoing acts, the Plaintiff is entitled to actual damages and disgorgement of the Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504.

64. Unless and until the Defendants' ongoing conduct with respect to the Second Infringing Commercial is enjoined by this Court, such conduct will continue to cause irreparable injury to Plaintiff's legacy and the integrity of the Original Work that cannot fully be compensated for or measured in money, and Plaintiff is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502, prohibiting further infringement of her exclusive rights under copyright.

# COUNT III

## VICARIOUS COPYRIGHT INFRINGEMENT

*Against All Defendants*

65. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 52 of this Complaint as if fully set forth herein.

66. The acts of the Defendants constitute vicarious infringements of Plaintiff's copyright and exclusive rights under copyright in the Original Work in violation of the Copyright Act, 17 U.S.C. § 106.

67. Upon information and belief, the foregoing acts of vicarious infringement by Defendants have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiff's rights.

68. The infringement of the Plaintiff's rights in each of the Original Works constitutes a separate and distinct act of infringement.

69. As a direct and proximate result of Defendants' foregoing acts, Plaintiff is entitled to actual damages and disgorgement of the Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504.

70. Unless and until the Defendants' ongoing conduct with respect to the First and Second Infringing Commercials is enjoined by this Court, such conduct will continue to cause irreparable injury to the Plaintiff's legacy and the integrity of the Original Work that cannot fully be compensated for or measured in money, and Plaintiff is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502, prohibiting further infringement of her exclusive rights under copyright.

## COUNT IV

### CONTRIBUTORY COPYRIGHT INFRINGEMENT

*Against All Defendants*

71. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 52 of this Complaint as if fully set forth herein.

72. The acts of the Defendants constitute contributory infringements of Plaintiff's copyright and exclusive rights under copyright in the Original Work in violation of the Copyright Act, 17 U.S.C. § 106.

73. Upon information and belief, the foregoing acts of contributory infringement by Defendants have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiff's rights.

COMPLAINT FOR COPYRIGHT INFRINGEMENT AND TRADE DRESS INFRINGEMENT UNDER THE LANHAM ACT

74. The infringement of Plaintiff's rights in the Original Work constitutes a separate and distinct act of infringement.

75. As a direct and proximate result of Defendants' foregoing acts, Plaintiff is entitled to actual damages and disgorgement of the Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504.

76. Unless and until the Defendants' ongoing conduct with respect to the First and Second Infringing Commercials is enjoined by this Court, such conduct will continue to cause irreparable injury to Plaintiff's legacy and the integrity of the Original Work that cannot fully be compensated for or measured in money, and Plaintiff is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502, prohibiting further infringement of her exclusive rights under copyright.

## COUNT V

### TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 USCS § 1125

*Against All Defendants*

77. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 52 as if fully set forth herein.

78. Plaintiff is the owner of distinctive trade dress consisting of feathered angel wings painted as a mural in human proportion on public spaces, in vivid colors with a white highlight, and each set of angel wings is executed by applying acrylic paint or acrylic-painted paper to the wall before adding additional details. *See* Exhibit A.

79. Plaintiff has continuously and extensively used this trade dress in commerce since 2012.

80. Plaintiff has invested substantial resources in developing, promoting, and advertising her trade dress.

81. Through Plaintiff's extensive use and promotion, Plaintiff's trade dress has acquired secondary meaning, such that consumers have come to associate the trade dress with Plaintiff as the source of the goods.

82. Plaintiff's trade dress is primarily non-functional, as it is not essential to the use or purpose of plaintiff's products and does not affect the cost or quality of the products.

83. Defendants began selling the Product bearing trade dress that is confusingly similar to Plaintiff's trade dress on or about March 10, 2024.

84. Defendants' trade dress consists of stylized motifs of life-sized feathered angel wings on an exterior building, from a straight on perspective to encourage humans to be photographed with arms outspread to mimic an angel spreading its wings, with a white highlight, along with featuring nearly the same exact shades of teal green and yellow as Plaintiff's Original Work (pictured left, below). The height, scale, colors, shape, texture, and overall impression of the Infringing Work (pictured right, below) is substantially similar to the Original Work.

 

85. Defendants' trade dress is confusingly similar to Plaintiff's trade dress in appearance, impression, and overall look and feel.

86. Defendants' use of the confusingly similar trade dress is likely to cause confusion, mistake, or deception among consumers as to the source, sponsorship, or approval of Defendants' Product.

87. Plaintiff received calls and numerous texts and direct messages on Instagram following the releases of the First Infringing Commercial and the Second Infringing Commercial demonstrating actual confusion about Plaintiff's and her Project's apparent association with Defendants and the Product, examples of which are

COMPLAINT FOR COPYRIGHT INFRINGEMENT AND TRADE DRESS INFRINGEMENT UNDER THE LANHAM ACT

hereinbelow:




88. Defendants' actions have caused and continue to cause irreparable harm to Plaintiff, including damage to Plaintiff's reputation and goodwill.

89. Defendants' actions have resulted in actual damages to Plaintiff, including lost sales and profits.

90. Plaintiff owns protectable trade dress.

91. Plaintiff's trade dress consists of feathered angel wings painted as a mural in human proportion in public, accessible spaces such as streets, alleys, and urban walls, as layered brushstrokes in vibrant colors with a white highlight, and a hand-crafted, organic look, and each set of angel wings is executed by applying acrylic paint or acrylic-painted paper to the wall before adding additional details; the wings are meant to be stood in front of so viewers become the "angel" and the art is completed by human participation *See* Exhibit A.

92. Plaintiff has continuously and extensively used this trade dress in commerce since 2012.

93. Plaintiff has licensed her wings to dozens of films, television shows and media outlets including Hollywood Teen medium, Growing Up Top Model, Cobra Kai, I Want My Phone Back, BUZZFEED, Refinery 29, Orion Beer commercial (Japan), Invisalign M2M Wildness, Hop Skip Jump, GHOSTING, AHA Film and Committee

for a Better LA, We are the Los Angeles Busy Tonight Show – Turbo Productions, Artist Spotlight LA BB&T (Saville Productions), IF ONLY, New Wave Entertainment–ZOO, Angels Friends photography license, Hangzou China, EYLA interior work space LA, LAMF "Summertime," Venus as a Boy, Full Bloom, Blue Orbit, To Tell The Truth, Random ACT of Magic, Street Art Stories, As the Cookie Crumbles, Sela Films The Program (untitled project, Wings on Macys DTLA), A&E Network Angel tv series, The Rookie (Arts District "Coop Wings", Ford Auto commercial, American Songs – Prospect Productions, EFT Media Evolution, Media Housewives, Abby List film – Hermosa Beach, Mullen Lowe Media Hub – El Segundo, NETFLIX Happy Place, Ndeska X Brent Faiyez interview, Light Switch – film HARD SUMMER, International Love tv show, Delerium TV, Dress My Tour tv – Bright Roads Productions, New Remote Productions/Viacom CBS, Killer Queen Wine Bar wings mural – SCRIPPS Network LLC, Pie Town TV, Ohio Singles Project/Paramount/Delerium TV, Dena Strong, Alta Dena, Black Eyed Peas Video (Alta Dena Fire Relief), Airports: Heathrow London, LAX, O'Hare Chicago and Liberty Newark.

94. Plaintiff's trade dress is inherently distinctive and/or has acquired secondary meaning.

95. Plaintiff's trade dress is inherently distinctive because of their signature artistic style, interactive human-focused design and scale.

96. Alternatively, Plaintiff's trade dress has acquired secondary meaning through extensive, continuous, widespread use, promotion, and advertising.

97. Consumers, tourists, and the general public associate these painted wings with Plaintiff's identity and artistic services since the Project began in 2012, in fact the wings are included on TMZ's Hollywood tour and several documentaries made about Plaintiff and the Project.

98. Plaintiff's trade dress is primarily non-functional.

99. The elements of plaintiff's trade dress are not essential to the use or

1 | purpose of the product and do not affect the cost or quality of the product.

2 |   100. Defendants have used and continue to use trade dress that is confusingly similar to Plaintiff's trade dress.

  101. Defendants began selling the Product bearing the confusingly similar trade dress on or about March 10, 2024 with the First Infringing Commercial.

  102. Defendants continued the sale and advertisement of the Product bearing the confusingly similar trade dress with their release of the Second Infringing Commercial on or about November 9, 2025.

  103. Defendants' use of confusingly similar trade dress is likely to cause confusion, mistake, or deception among consumers as to the source, sponsorship, or approval of Defendants' Product, as depicted hereinabove.

  104. Plaintiff has received numerous messages from the consuming public demonstrating actual confusion.

  105. Defendants' actions constitute trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 USCS § 1125.

  106. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer irreparable harm to her business, reputation, and goodwill.

  107. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer monetary damages in an amount to be determined at trial.

  108. Defendants' infringement has been willful, deliberate, and in bad faith.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff COLETTE MILLER respectfully requests that this Honorable Court enter judgment in Plaintiff's favor and against Defendants as follows:

  a. Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that Defendants' creation of an unauthorized copy of the Original Work of Plaintiff, unauthorized duplication, public display, distribution, and sale of the First

Infringing Commercial, infringes the Plaintiff's copyright in the Original Work, in violation of the Copyright Act;

b. Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that Defendants' creation of an unauthorized copy of the Original Work of Plaintiff, unauthorized duplication, public display, distribution, and sale of the Second Infringing Commercial, infringes the Plaintiff's copyright in the Original Work, in violation of the Copyright Act;

c. Granting a permanent injunction prohibiting Defendants from further infringement of the Plaintiff's copyrights, including further airing of, or making available to the public, the First and Second Infringing Commercials, and further production or transfer of the First and Second Infringing Commercials or any infringing images of the Original Work, including but not limited to promotional materials;

d. Awarding the Plaintiff the actual damages she has suffered in connection with damage to Plaintiff's reputation and the market for Plaintiff's works, including the Original Work, and the profits directly and indirectly attributable to the Defendants from the infringement in the First and Second Infringing Commercials;

e. A permanent injunction pursuant to 15 USCS § 1116, enjoining and restraining defendant and its officers, directors, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from using Plaintiff's trade dress or any trade dress that is confusingly similar to Plaintiff's trade dress;

f. An order directing Defendants to recall all products, packaging, and promotional materials bearing the infringing trade dress;

g. An award of Defendants' profits derived from their infringing activities pursuant to 15 USCS § 1117;

h. An award of all damages sustained by Plaintiff as a result of Defendants'

       infringing activities pursuant to 15 USCS § 1117;

  i. An enhancement of the award of profits and/or damages pursuant to 15 USCS § 1117, as the Court finds appropriate due to the willful nature of Defendants' infringement;

  j. An award of Plaintiff's reasonable attorneys' fees and costs pursuant to 15 USCS § 1117; and

  k. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands trial by jury on all issues so triable.

DATED: December 17, 2025      Respectfully submitted,

**COLETTE MILLER**

  /s/   *Heather L. Blaise*

HEATHER L. BLAISE, ESQ. (SBN 261619)

*Attorney for Plaintiff*

COMPLAINT FOR COPYRIGHT INFRINGEMENT AND TRADE DRESS INFRINGEMENT UNDER THE LANHAM ACT